## H. T. CLARKE v. C. F. WILLIAMS ET AL.

[FILED MAY 27, 1890.]

1. **Evidence: GRADING CONTRACT.** In an action for the **removal** of earth at twenty cents per cubic yard, one S. testified that he had cross-sectioned the work before the grading was done, and in substance that the measurements were accurate. A Mr. H. then testified that he and S. had made estimates from the data furnished by S., and from such data a certain number of cubic yards of earth had been removed. *Held,* That the **evidence of** H. was properly received.

2. ———: ———: **ESTIMATES.** Where the engineers of the city have cross-sectioned certain grading to be done for the city, made estimates thereof and filed the same in the engineer's department, such estimates are admissible as *prima facie* evidence of the correctness of such estimates.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*John L. Webster,* for plaintiff in error.

*W. S. Shoemaker, contra.*

MAXWELL, J.

This action was brought by the defendant in error against the plaintiff in error to recover for the removal of 21,000 cubic yards of earth from the premises of the plaintiff in error at the agreed price of twenty cents per

cubic yard, amounting in the aggregate to the sum of $4,200, upon which the sum of $2,500 has been paid. The defendant below (plaintiff in error) in his answer admits the contract, but denies that he was to pay twenty cents per cubic yard for moving said earth, or that the defendant in error removed 21,000 cubic yards. On the trial of the cause the jury returned a verdict in favor of the plaintiff below for the sum of $1,700, and a motion for a new trial having been overruled, judgment was entered on the verdict.

The principal errors assigned relate to the admission and exclusion of certain testimony.

The testimony tends to show that the only mode of making an accurate estimate of the number of cubic yards of earth to be removed was to cross-section the work before the grading was done. It also appears that a Mr. Hawley was employed by the defendant in error to cross-section the work, and that his estimates were made upon measurements of a Mr. Smith. Smith was called as a witness on the trial, and testified, in substance, that the cross-section measurements made by him were correct. The testimony of Hawley, therefore, was admissible.

On the part of the defendant below one J. E. House was called as a witness, and it appeared that he was an engineer of great experience. His testimony as to the basis of his estimates is as follows:

Q. Touching the papers that were prepared by yourself, will you produce them?

A. This paper represents the cross-section of the profile of Cass street, between Twenty-fifth and Twenty-third and also the alley between the three points. This was made by myself with the data that was obtained from the bottom of the cross-section that was obtained from the city engineer's department.

That part of the answer relating to what he obtained from the city engineer's department is objected to as im-

proper and incompetent.  The objection is overruled; to which the plaintiff excepts.

Q.  State what were the records in the office of the city engineer from which you say you obtained a part of the data on the preparation of the document.

Objected to, as incompetent, irrelevant, and immaterial and calling for a record of the office, which is the best evidence.  Objection overruled; plaintiff excepts.

A.  The official records of their office; what they said to be the official records.

The plaintiff here moves to strike out the answer, as not responsive, and hearsay evidence.  Motion is sustained.

Q.  From your own personal knowledge of that office, from your experience in that office at one time as city engineer, and from your knowledge as a city engineer, and from your knowledge as a civil engineer, and from your experience as a chairman of the board of public works, of the city, have you——

Q.  State if you know or not the papers from which you took the data were part of the official records of the office of the city engineer.

A.  They were thoroughly under that condition of things; they were the official papers of the city.

Q.  What part of the data which were used by you in the preparation of the documents you have in your hand was obtained from the office of the city engineer?

A.  The lower elevation and the cross-section of Cass street between Twenty-third and Twenty-fifth and the alley between Twenty-third and Twenty-fifth north of Cass.

Q.  The other document, which appears in your hand, was ascertained from what source?

A.  From my own work, my own measurement, or whatever you might call it.

The defendant here offers this paper in evidence as "Exhibit G."

Objected to, as incompetent, immaterial, irrelevant, and for the further reason it shows simply the cross-section of a certain street and is not an alley in Omaha, and not a part or parcel of the cross-section of the work which was done and is here in controversy. The objection is sustained; the defendant excepts.

Q. What is that document you now have in your hand?

A. This is a paper which shows the cross-section of that part of the block that was done by Mr. Ellis and Black, also that part of the block that was done by Mr. Sturgess, and the bottom elevation, which was figured in red, representing my own work, and from that I make my calculation, and the calculations are carried out by the area and the cubic yards in each distinct piece of ground.

The defendant offers this book in evidence, refers to "Exhibit E."

Plaintiff objects, as incompetent, irrelevant, and immaterial and not properly identified, and as hearsay evidence, and irrelevant. The objection is sustained.

Q. You may state what you yourself did by way of verifying the correctness of the cross-section referred to and touching the last paper.

This paper represents the profile of the north line of Cass street, as it existed at that time, at the time I did this work; also a profile of the north line in the alley south of Cass street, that would represent the two walls between Twenty fifth and Twenty-sixth.

Q. That was prepared by whom?

A. That was prepared by myself; upon that basis I made up the quantity in the excavation; I made all the calculation myself.

Q. State what you did in the way of verifying the correctness of the cross-section shown on the paper marked "Exhibit E."

A. That could only be done by the calculations that were made. I made the calculation on the work that was done

by Mr. Ellis and Black, and these quantities or excavation which amounted to 15,200 yards. (Objected to.) Ellis and Black furnished certain figuring, and allow me to explain, please.

Objected to, as hearsay. Objection sustained; defendant excepts.

Q. You may state now yourself what estimate you made touching the amount of dirt which was removed from the east part of the lot, also explain to the jury the estimates of the ground and earth which was filled in from the west part of the block into the alley, and your manner of arriving at that result; you may proceed, and tell that— the earth—you can do it much better than I can by asking you a question.

Objected to, as incompetent, irrelevant, and immaterial; all of that part of the question that calls for any estimate or calculation or figures, based upon hearsay evidence or those notes of Ellis & Black or anybody else who have not been identified as evidence before the jury. The objection is sustained and the defendant excepts.

Q. You may go on then.

A. From my calculation on the work that was done on Cass street between Twenty third and Twenty-fifth streets, it amounted to 6,057 yards, somewhere in that neighborhood, I am not sure about it. The amount of the work that was put in the alley amounted to 3,300 and some yards; it may be a little in excess of those figures. From the estimate of my own work with regard to the material that was taken off of block 8.

Objected to, as to ———— it refers to any of that reference, referred to by Mr. Sturgess.

A. Nothing from Mr. Sturgess; it is all my own.

Q. By Mr. Shoemaker, did you cross-section it before you began?

A. No, sir; I said where I got my information.

The defendant objects as above.

By the Court: In the estimate of the work which was done and the removal of the work from block 8, what did you base that on—how did you get ――――― for that?

A. The north line of the alley was undisturbed; the north line of Cass street is undisturbed, this fill is of uniform slope, it rises from Twenty-fifth to Twenty-sixth. I know this ground and I knew before anything was done on the block there; from my own knowledge I knew what they were, and the slopes were uniform and good; by calculating very closely that way I ascertained the quantity of dirt that was removed from block 8. I don't sit here and swear to the exact yards, as they had cross-sectioned the ground in squares ten and twenty feet, twenty-five feet. I say that I arrived at it so closely that it wouldn't be a question here or there as to the amount of material; it might be a little more or less.

Q. You have a profile as to the north line of Cass street?

A. Yes, sir; from that I made cross-section and the quantities of material that lay between the two points, between Twenty-fifth and Twenty-sixth streets.

The court erred in excluding this testimony. These surveys were made by sworn officials of the city for the sole purpose of arriving at a correct estimate of the amount of earth to be removed and were *prima facie* correct. They were proper for the jury to consider in connection with the other evidence in order to reach a correct conclusion as to the amount of earth removed.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.